UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/23/2026

---

JIA JIA ZHENG, *as Administrator of the Estate of E.L.*,

Plaintiff,

-against-

UNITED STATES OF AMERICA,

Defendant.

---

25-cv-3695 (MKV)

OPINION & ORDER GRANTING
MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Jia Jia Zheng, as administrator of the estate of E.L., brings this action "pursuant to the Federal Tort Claims Act" ("FTCA") based on allegations that a "federally owned health center" and its staff committed medical malpractice that caused the "neonatal demise of [her] infant," E.L. [ECF No. 6 ("Compl.") ¶¶ 6, 17, 24].  Defendant United States of America (the "Government") moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56 on the grounds that Plaintiff failed to file an administrative tort claim ("SF-95"), as required by the FTCA, until nearly two years after the statute of limitations had expired, Plaintiff did not exercise reasonable diligence, and no extraordinary circumstance prevented her from timely filing her administrative claim.  For the reasons set forth below, the Government's motion is GRANTED.

## I.    BACKGROUND[1]

Plaintiff alleges that beginning in or about January 2020, she "presented herself to the

---

[1] The facts underlying the substance of Plaintiff's claims are drawn from the Complaint and accepted as true [ECF No. 6 ("Compl.")]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facts pertinent to the timeliness of Plaintiff's claims are drawn from the declaration of counsel for the Government and the exhibits attached thereto [ECF Nos. 18 ("Osmond Decl."), 18-1 ("State Action Compl."), 18-2 ("Verified Ans."), 18-3 ("Stip. and Order of Dismissal"), 18-4 ("SF-95")] and from the facts contained in the affirmation of Plaintiff's counsel and the exhibit attached thereto [ECF Nos. 21 ("Aff."), 21-1 ("Email Corr.")].  The facts pertinent to the timeliness of Plaintiff's claims are undisputed.

1

Char[]les B. Wang Community Health Center" (the "Health Center") for "prenatal care." Compl. ¶ 15. She further alleges that the Health Center and its staff "failed to diagnose" her with a "severe" obstetric condition "before she went into labor." *Id.* ¶ 16. Plaintiff alleges that, as a result, the "Cesarean section" delivery (which was performed by a doctor employed by the Health Center at New York Presbyterian Lower Manhattan Hospital ("NYPLM")) was "inordinately delayed[,] causing the neonatal demise of the infant" E.L. on August 15, 2020. *Id.* ¶ 24.

It is undisputed that nearly two years after the child's death, on August 12, 2022, Plaintiff first filed a lawsuit in the Supreme Court of the State of New York, County of New York (the "State Court Action"), alleging medical malpractice, wrongful death, and related claims against the Health Center, NYPLM, and the doctor. *See* State Action Compl.; Aff. ¶ 4. It is further undisputed that, thereafter, on September 2, 2022, the Health Center filed an answer in the State Court Action expressly notifying Plaintiff that the Health Center "is a Federally Deemed Healthcare Center" and that any action against it and its employees "can only be brought under the Federal Torts Claims Act in the appropriate Federal Jurisdiction." Verified Ans. at 6; *see id.* at 2; Aff. ¶ 5.

However, notwithstanding that the child had died on August 15, 2020 and that Plaintiff concedes she had "express notice that [her] claims were governed by the FTCA" on September 2, 2022, there is no dispute that Plaintiff failed to file an administrative tort claim ("SF-95") with the United States Department of Health and Human Services ("HHS") until July 15, 2024, which was nearly two years after her statutory time to file the SF-95 had expired. *See* SF-95; Aff. ¶ 6.

Specifically, after the defendants in the State Action filed the aforementioned answer in the State Action, the Government certified that the Health Center and the doctor who treated Plaintiff are "deemed to be employees of the United States Public Health Service under the Federal Tort Claims Act," 42 U.S.C. § 233(g), and removed the State Action to this District [24-cv-2136

2

(MMG), *Zheng v. New York Presbyterian Lower Manhattan Hospital* ("*Zheng I*"), ECF Nos. 1, 1-2].  Thereafter, on May 14, 2024, Plaintiff and the Government jointly filed a stipulation that (1) the "United States of America is substituted as defendant in place of" the Health Center and the doctor, and (2) "Plaintiff's claims against the United States of America in this action are dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)" [24-cv-2136 (MMG), ECF No. 13 (the "Stipulation" or "Stip.")].  The Stipulation also states "Plaintiff is allowed to proceed [sic] the administrative claim pursuant to 28 U.S.C. 1346(b), 2401(b), 2671-2680."  Stip. at 1.

Plaintiff asserts that "[o]nce the federal nature of the claim was clarified, Plaintiff's counsel actively corresponded with the Assistant U.S. Attorney" defending the Government in *Zheng I* "to clarify the administrative process."  Aff. ¶ 18.  In particular, Plaintiff stresses that, in connection with the Stipulation of dismissal of *Zheng I*, Plaintiff requested the Government's "consent to allow [her] to file a Form 95."  Email Corr. at 4; *see* Aff. ¶ 6; *see also id.* ¶¶ 19, 29.  As demonstrated by Plaintiff's own submissions, counsel for the Government responded: "There's nothing preventing you from filing the administrative claim."  Email Corr. at 4; *accord* Aff. ¶¶ 6, 19, 29.

On May 16, 2024, the judge assigned to *Zheng I* signed the Stipulation in which Plaintiff voluntarily dismissed without prejudice her claims against the Government "pursuant to Fed. R. Civ. P.41(a)(1)(A)(ii)."  Stip. and Order of Dismissal at 2.  The judge also noted that she would "remand" the claims against NYPLM back to state court by "separate order."  *Id.*

Two months later, on July 15, 2024, Plaintiff filed an SF-95 with HHS based on the alleged medical malpractice that had resulted in her child's death on August 15, 2020.  *See* SF-95.  According to Plaintiff, HHS denied the claim on November 4, 2024, although she does not offer any further information about the denial.  Compl. ¶ 3.  Five months and twenty-eight days after the denial, on May 2, 2025, Plaintiff attempted to commence this action by filing a deficient

complaint [ECF No. 1].  On May 6, 2025, Plaintiff filed the operative Complaint in this action [ECF No. 6 ("Compl.")].

In the Complaint, Plaintiff asserts that "the instant lawsuit is being filed within six months of the final administrative determination and is accordingly timely."  Compl. ¶ 3.  The Complaint itself says nothing about when Plaintiff filed the SF-95 and entirely omits the history of *Zheng I* set forth above.  Indeed, in the Civil Cover Sheet for the action, Plaintiff checked the "No" box in response to the question, "Has this action, . . . or one essentially the same, been previously filed in SDNY at any time?" [ECF No. 4].  The Complaint makes clear that Plaintiff's claims are "brought pursuant to the Federal Tort Claims Act" and arise out of the "neonatal demise of [her] infant" on August 15, 2020.  *Id.* ¶¶ 6, 24.  Plaintiff asserts claims for medical malpractice, lack of informed consent, and wrongful death.  *See id.* ¶¶ 1–47.

In accordance with the Court's Individual Rules of Practice in Civil Cases, the Government responded to the Complaint with a pre-motion letter seeking leave to file a motion to dismiss or, in the alternative, for summary judgment [ECF No. 11 ("Gov. PML")].  The Government laid out in its pre-motion letter precisely the grounds on which it now moves.  It argued that the case should be dismissed, under Rule 12(b)(6), "as untimely because Plaintiff did not file an administrative tort claim ('SF-95') within two years of the alleged injury as was statutorily required."  Gov. PML at 1.  It explained that Plaintiff had waited "nearly four years" after her injury and "almost two years after the statute of limitations lapsed" to file the required SF-95.  Gov. PML at 2.  It further explained the history of *Zheng I*, noting that Plaintiff had waited "two months" after stipulating to the dismissal of that case to file the SF-95.  *Id.* at 1–2.  The Government summarized its arguments (discussed below) that equitable tolling does not apply.  *Id.* at 3.  It also provided notice in its PML that it intended to "move for summary judgment in the alternative" to "ensure that the Court can

consider certain administrative and judicial filings." *Id.* at 1 n.1.

Plaintiff filed a letter in response to the Government's pre-motion letter [ECF No. 12 ("Pl. PML")]. Plaintiff argued that, although "equitable tolling is a 'drastic remedy applicable only in rare and exceptional circumstances,'" the Court should apply it here because "Plaintiff contends that she pursued her rights diligently, albeit initially in state court." Pl. PLM. at 1. Plaintiff also stressed her counsel's correspondence with counsel for the Government in connection with the dismissal of *Zheng I*, citing the email in which counsel for the Government stated, "There's nothing preventing you from filing the administrative claim." *Id.* at 2.

After reviewing the parties' pre-motion letters, the Court issued an Order granting the Government leave to file its contemplated motion and granting "Plaintiff leave to amend the Complaint before any such motion is filed" [ECF No. 13 ("Scheduling Order") (internal citation omitted)]. In its Scheduling Order, the Court expressly directed Plaintiff to "file a letter informing the Court and the Government whether Plaintiff intends to file an amended complaint" by a certain deadline. Scheduling Order at 1. The Court also warned Plaintiff, in bold typeface, that it would be "**her last opportunity to amend to address any issue raised in the parties' pre-motion letters.**" *Id.* (emphasis in original).

Plaintiff, however, failed to comply with the Court's Scheduling Order. She failed to file a letter informing the Court and the Government whether she intended to amend her pleading by the deadline the Court had set. Accordingly, the Court issued an Order To Show Cause "why she should not be sanctioned for failure to prosecute this case and failure to comply with a court order [ECF No. 14 ("OTSC")]. The Court warned: "**Plaintiff is on notice that sanctions may include monetary sanctions on counsel and/or plaintiff, forfeiture of the opportunity to amend the complaint, and dismissal of this action pursuant to Rule 41(b) of the Federal Rules of Civil**

**Procedure.**" OTSC at 1 (emphasis in original). The Court also warned: "**Plaintiff is further on notice that it is ultimately her responsibility to prosecute this case, which may be dismissed because of her chosen counsel's failure to prosecute it.**" *Id.* (emphasis in original). The Court further directed counsel to advise Plaintiff of its warnings. *Id.* Plaintiff filed a letter in response to the Court's Order To Show Cause apologizing for the failure to comply and stating that she did not intend to amend the Complaint [ECF No. 15 ("Letter Declining To Amend")].

The Government timely filed its motion to dismiss or for summary judgment, supported by a memorandum of law, declaration of counsel, and a number of exhibits [ECF Nos. 17, 18 ("Osmond Decl."), 18-1 ("State Action Compl."), 18-2 ("Verified Ans."), 18-3 ("Stip. and Order of Dismissal"), 18-4 ("SF-95"), 19 ("Mem.")]. Plaintiff thereafter filed two different versions of her opposition without offering any explanation for the duplicative filings. First, Plaintiff filed a document styled as "Attorneys' Affirmation in Opposition to Defendant's Motion To Dismiss or, Alternatively, for Summary Judgment," which purports to be the affirmation of Muhui Huang, made under penalty of perjury, but combines assertions of fact with legal arguments that should have been made in a memorandum of law [ECF No. 20]. About two hours later, Plaintiff filed an identical document together with an attachment that was referenced in, but not actually attached to, the original filing—namely, the email correspondence between counsel for Plaintiff and counsel for the Government in *Zheng I* on which Plaintiff relies heavily in her argument for equitable tolling [ECF Nos. 21 ("Aff."), 21-1 ("Email Corr.")].

Plaintiff did not request, let alone receive, leave to file a corrected version of her opposition. Nevertheless, the Court considers the later-filed version of Plaintiff's opposition. The Government subsequently filed a reply brief in further support of its motion [ECF No. 22 ("Reply")].

6

## II.    LEGAL STANDARDS

### A.  Motion To Dismiss

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court resolving a motion to dismiss does not "credit" mere "conclusory" assertions "or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (citation omitted). "When a plaintiff relies on a theory of equitable estoppel to save a claim that otherwise appears untimely on its face, the plaintiff must specifically plead facts that make entitlement to estoppel plausible (not merely possible)." *Id.*

### B.  Motion for Summary Judgment

"Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *Alta Partners, LLC v. Getty Images Holdings, Inc.*, 165 F.4th 141, 148–49 (2d Cir. 2026) (quoting *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021)); *see* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The Court considers only admissible evidence on a motion for summary judgment.  *See Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 364 (2d Cir. 2025); Fed. R. Civ. P. 56(c)(2).

### III.     DISCUSSION

As noted above, the Government moves to dismiss this case "pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56." Mem. at 1.  Plaintiff has had notice of the Government's intention to file such a motion, and the Government's precise arguments that Plaintiffs claims are time-barred, since the Government filed its pre-motion letter.  *See* Gov. PML.  Plaintiff, however, has never taken a position on whether the Government's motion should be resolved pursuant to Rule 12(b)(6) or Rule 56.  As explained below, the Court concludes that the Government prevails on its motion whether the Court proceeds under Rule 12(b)(6) or Rule 56.

### A.  The Government's Statute of Limitations Defense Is Clear on the Face of the Complaint.

If the Court proceeds under Rule 12(b)(6), and therefore considers only the face of the Complaint and the SF-95, which is "integral" to the Complaint, this case is clearly time-barred. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002);[2] *see Pryce v. United States*, No. 21-cv-1698 (KPF), 2022 WL 3155842, at *7 (S.D.N.Y. Aug. 8, 2022); *Barone v. United States*, No. 12-cv-4103 (LAK), 2014 WL 4467780, at *13 (S.D.N.Y. Sept. 10, 2014); *Olivio v. United States*, No. 20-cv-231 (RPK), 2022 WL 409720, at *3 (E.D.N.Y. Feb. 10, 2022); *see also Fiore v.*

---

[2] The SF-95 clearly is "integral" to the Complaint because Plaintiff, who filed the SF-95, had the document in her possession, had knowledge of it, and clearly relied on it in bringing suit, since, as explained above, she had previously agreed to dismiss *Zheng I* while she proceeded with filing the SF-95 as a prerequisite to filing this action.  *See Chambers*, 282 F.3d at 153.  In a similar circumstance, the Second Circuit held that, in ruling on a 12(b)(6) motion to dismiss, it was "proper for th[e] court to consider the plaintiff[']s relevant filings with the EEOC," even though the plaintiff did not attach the EEOC charge to the complaint, because the plaintiff "rel[ied]" on having filed that charge "to satisfy the ADEA's time limit requirements."  *Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 566 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008).

*Medina,* No. 11-cv-2264 (RJS), 2012 WL 4767143, at \*7 (S.D.N.Y. Sept. 27, 2012).  The FTCA provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).  "FTCA medical malpractice claims accrue 'at the time of injury.'"  *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 139 (2d Cir. 2011) (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)).  Here, the Complaint clearly alleges the Plaintiff's injury accrued on August 15, 2020, when her child died.  Compl. ¶ 24.  The SF-95 establishes that Plaintiff did not present her claim to HHS until July 15, 2024.  SF-95.  As such, it is clear on the face of the Complaint that Plaintiff did not present her claim to HHS "within two years after such claim accrue[d]."  28 U.S.C. § 2401(b); *see Thea*, 807 F.3d at 501.

In the Complaint, Plaintiff asserts that her "lawsuit" is "timely" because it was "filed within six months of the final administrative determination" by HHS.  Compl. ¶ 3.  However, the Second Circuit long ago rejected the argument that "since 'or' is a disjunctive, a person can prevail if he satisfies either condition specified in 28 U.S.C. § 2401(b)."  *Willis v. United States*, 719 F.2d 608, 610 (2d Cir. 1983).  Rather, the Second Circuit observed that "the result of a strictly literal reading would be absurd," in part because since "such a reading would mean that there would be no time limitation on the filing of claims with agencies."  *Id.*  As such, courts in this Circuit have long ruled that "FTCA claimants must comply with both the two-year filing of claim and the six-month filing of suit requirements."  *Abdoulaye v. Cimaglia*, No. 15-cv-4921 (PKC), 2018 WL 1890488, at \*3 (S.D.N.Y. Mar. 30, 2018); *see Petrecca v. United States*, No. 91-cv-0524 (TPG), 1991 WL 161320, at \*1 (S.D.N.Y. Aug. 15, 1991).  Accordingly, it is clear on the face of the Complaint and the SF-

95 that Plaintiff's case is time-barred because she failed to file the SF-95 until approximately four years after her claim accrued, which was approximately two years too late. *See Thea*, 807 F.3d at 501; *Willis*, 719 F.2d at 610; 28 U.S.C. § 2401(b).

While not material to the disposition of the Government's motion, the Court simply notes that Plaintiff—who argues that her lawsuit is "timely" because it was "filed within six months of the final administrative determination" by HHS—waited five months and twenty-eight days after the HHS denial only to file a deficient pleading. Specifically, Plaintiff alleges that HHS denied her administrative claim on November 4, 2024. Compl. ¶ 3. The operative Complaint was not filed until May 6, 2025, which was six months and two days after November 4, 2024 [ECF No.]. Plaintiff had waited until the eve of the six-month deadline to attempt to initiate this action, at which point she filed a deficient pleading [ECF No. 1]. To be sure, under the Federal Rules of Civil Procedure, a "civil action is commenced by filing a complaint," and there is authority for the proposition that a deficient complaint nonetheless commences the action for purposes of a statute of limitations. Fed. R. Civ. P. 3; *see Kalican v. Dzurenda*, 583 F. App'x 21, 23 (2d Cir. 2014). Yet the decision to wait "until the eleventh hour" to attempt to file the Complaint is conspicuous in this case, given that Plaintiff already faced a glaring statute-of-limitations problem. *Ediagbonya v. United States*, No. 18-cv-3882 (VSB), 2020 WL 5659539, at *3 (S.D.N.Y. Sept. 23, 2020) (quoting *Yesh Diamonds, Inc. v. Yashaya*, 2010 WL 3851993, at *3 (E.D.N.Y. Sept. 27, 2010)). In any event, as explained above, Plaintiff was required to "comply with **both** the two-year filing of claim and the six-month filing of suit requirements," *Abdoulaye*, 2018 WL 1890488, at *3 (emphasis added), and Plaintiff failed to file the SF-95 within the two-year period.

The time limits in the FTCA are subject to equitable tolling. *See United States v. Wong*, 575 U.S. 402, 412 (2015). However, as the Second Circuit has stressed in the context of medical

malpractice actions pursuant to the FTCA, equitable tolling is "a drastic remedy applicable only in 'rare and exceptional circumstances.'" *A.Q.C.*, 656 F.3d at 144 (alteration adopted) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The Second Circuit has observed that "equitable tolling often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record." *Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023).  Thus, "to withstand a motion to dismiss based on a statute-of-limitations defense, a plaintiff need only plead facts that plausibly suggest equitable tolling should apply." *Levin v. Sarah Lawrence Coll.*, 747 F. Supp. 3d 645, 672 (S.D.N.Y. 2024); *see Lomako v. New York Inst. of Tech.*, 440 F. App'x 1, 3 (2d Cir. 2011).  Here, however, the Complaint is utterly devoid of any allegations to suggest that the two-year limit for filing the SF-95 should be equitably tolled.

Indeed, as noted above, the Complaint itself is devoid of allegations about when Plaintiff filed the SF-95 and her actions prior to filing the SF-95 in connection with *Zheng I*.  *See supra* at 4.  The Complaint does not allege a single fact to suggest that Plaintiff diligently pursued her rights and some extraordinary circumstance stood in her way.[3]  *See A.Q.C.*, 656 F.3d at 144.  As such, Plaintiff obviously has failed to "plead facts that plausibly suggest equitable tolling should apply." *Levin*, 747 F. Supp. 3d at 672; *see Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir. 2003) (affirming 12(b)(6) dismissal because "the District Court did not abuse its discretion in concluding that equitable tolling is not warranted"); *Lomako*, 440 F. App'x at 3

---

[3] Rather, all of the information set forth above about Plaintiff's filing of the State Court Action and the circumstances of her voluntary dismissal of *Zheng I* come from outside the pleadings.

(affirming 12(b)(6) dismissal where the "complaint lacked any factual allegations suggesting . . . . a plausible basis for equitable tolling"); *Barone*, 2014 WL 4467780, at \*13 & n.12 (dismissing FTCA claim because the administrative claims was filed "more than two years" after the injury accrued, and "Plaintiff has not alleged any basis for the application of equitable tolling to his case"); *Olivio*, 2022 WL 409720, at \*3.

Moreover, although Plaintiff devotes most of her opposition to purported arguments for equitable tolling, she also invokes a "theory of equitable estoppel" in her opposition papers. *Thea*, 807 F.3d at 501; *see* Aff. ¶ 27 (citing, for reasons passing understanding, a First Circuit case from 1984, a Hawaii statute, a California statute, and two inapposite federal regulations governing proceedings before an administrative law judge). "Equitable tolling is distinct from equitable estoppel." *Levin*, 747 F. Supp. 3d at 673. Under the latter doctrine, a defendant is "estopped from asserting a statute of limitations defense" because "'the defendant's conduct caused [the plaintiff] to delay.'" *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49–50 (2d Cir. 1985)). The Second Circuit has held that when a plaintiff "relies on a theory of equitable estoppel to save a claim that otherwise appears untimely on its face, the plaintiff must specifically plead facts that make entitlement to estoppel plausible (not merely possible)." *Thea*, 807 F.3d at 501. In the Complaint, Plaintiff does not plead a single fact to suggest that the Government caused her to delay filing the SF-95 until approximately two years too late.

Plaintiff expressly elected not to amend her pleading to include *any* allegations to suggest that the time limit for filing her administrative tort claim should be equitably tolled or the Government should be equitably estopped from asserting the statute of limitations. *See* Letter Declining To Amend. She made this choice after the Government provided her with clear notice

12

of its intention to file a 12(b)(6) motion to dismiss the Complaint on the ground that she had failed to file the SF-95 until nearly two years after the statute of limitations had expired. *See* Gov. PML. Moreover, the Court *sua sponte* granted Plaintiff leave to amend her pleading "before any such motion [was] filed." Scheduling Order at 1. The Court specifically warned Plaintiff, in bold, that it would be "**her last opportunity**" to correct the facial deficiency with her Complaint that the Government had identified. *Id.* (emphasis in original). Nevertheless, after first failing to comply with the deadline to inform the Court and the Government whether she intended to amend, Plaintiff wrote: "Plaintiff does not intend to file an amended complaint and wishes to proceed on the current complaint. This decision was made after careful review of the current complaint and applicable law." Letter Declining To Amend at 2. Plaintiff had clear notice and an opportunity to cure her pleading but simply declined to do so. *See Franck v. New York Health Care, Inc.*, No. 21-cv-4955 (GHW)(JLC), 2022 WL 4363855, at *11 (S.D.N.Y. Sept. 21, 2022), *report and recommendation adopted*, 2023 WL 2474559 (S.D.N.Y. Mar. 11, 2023).

Accordingly, it is appropriate to dismiss this case as time-barred pursuant to Rule 12(b)(6). It is clear on the face of the Complaint and the SF-95, which is integral to the Complaint and which the Court properly considers on a Rule 12(b)(6) motion, that Plaintiff's case is time-barred. *See Holowecki*, 440 F.3d at 566; *Thea*, 807 F.3d at 501. Plaintiff's injury accrued on August 15, 2020. Compl. ¶ 24. She had two years thereafter to file an administrative claim with HHS. *See* 28 U.S.C. § 2401(b); *Willis*, 719 F.2d at 610. However, Plaintiff did not file the SF-95 until July 15, 2024, which was approximately two years after the statute of limitations had expired. *See* SF-95. The Complaint does not contain a single allegation that Plaintiff had been diligently pursuing her rights and an extraordinary circumstance stood in her way, as required for equitable tolling of the statute of limitations. *See A.Q.C.*, 656 F.3d at 144. Nor does Plaintiff plead a single fact suggesting that

13

the Government caused her to delay filing the SF-95. The Court therefore grants the Government's motion to dismiss pursuant to Rule 12(b)(6). *See Lomako*, 440 F. App'x at 3.

## B. In the Alternative, the Government Is Entitled to Summary Judgment.

The Government moves in the alternative for summary judgment, although the parties have not conducted discovery or submitted Local Civil Rule 56.1 Statements, and the documents on which the Government relies are properly before the Court on a motion to dismiss. *See* Mem. at 1; *Chambers*, 282 F.3d at 153–54; *Holowecki*, 440 F.3d at 566. The Second Circuit has explained that "a district court acts properly in converting a motion" at the pleading stage "into a motion for summary judgment when the motion presents matters outside the pleadings," and the opposing party has "sufficient notice" and "an opportunity . . . to respond." *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009); *see* Fed. R. Civ. P. 12(d). Here, Plaintiff does not argue that she needs discovery to develop the record in support of her argument for equitable tolling or that summary judgment practice on this issue is otherwise premature. *See* Aff. ¶¶ 2, 4–7. Rather, it is Plaintiff who principally relies on "matters outside the pleadings" to avoid dismissal.[4] *Hernandez*, 582 F.3d at 307; *accord* Fed. R. Civ. P. 12(d).

As such, for Plaintiff's benefit, the Court proceeds to consider whether the Government is entitled to summary judgment. As explained below, the material facts are not in dispute. The Government clearly meets its burden to demonstrate that Plaintiff's claims are time-barred and equitable tolling is not warranted. *See Celotex*, 477 U.S. at 323; *A.Q.C.*, 656 F.3d at 144. Plaintiff,

---

[4] In particular, Plaintiff submits email correspondence with counsel for the Government in *Zheng I*, which cannot be considered on a motion to dismiss. *See Chambers*, 282 F.3d at 153. She also relies on the Stip. and Order of Dismissal in *Zheng I*. *See* Aff. ¶ 23. On a motion to dismiss, a "court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). Plaintiff, however, relies on the document for the truth of the assertion that she was "allowed" to pursue a time-barred claim. Aff. ¶ 23; Stip. and Order of Dismissal.

moreover, fails to come forward with admissible evidence to raise a genuine dispute as to whether an extraordinary circumstance stood in her way and she diligently pursued her rights. *See A.Q.C.*, 656 F.3d at 144; *Brown*, 654 F.3d at 358; *Nambiar*, 158 F.4th at 364. Finally, as to Plaintiff's equitable estoppel theory, no reasonable factfinder could conclude that the Government caused Plaintiff to delay filing the SF-95 until nearly two years after the limitations period expired merely because, more than a year and half the limitations period had expired, a government lawyer wrote, "There's nothing preventing you from filing the administrative claim." Email Corr. at 4; *see Ellul*, 774 F.3d at 802; *Clark*, 89 F.4th at 95.

As an initial matter, it is undisputed that Plaintiff failed to file the SF-95 until nearly four years after her injury accrued, which was nearly two years after the statute of limitations had expired. Plaintiff submits, in affidavit of counsel made under penalty of perjury, that "[t]his action arises" from the death of her child "on August 15, 2020." Aff. ¶ 3. Therefore, as explained above, Plaintiff was required to file an administrative claim with HHS "within two years" of that date. 28 U.S.C. § 2401(b); *see A.Q.C.*, 656 F.3d at 139; *Willis*, 719 F.2d at 610. However, the parties agree, and evidence in the record establishes, that Plaintiff instead filed the SF-95 on July 15, 2024. Aff. ¶ 6; Osmond Decl. ¶ 5; SF-95. As such, there is no dispute that Plaintiff's lawsuit must be dismissed as time-barred unless a reasonable factfinder could conclude that a "drastic [equitable] remedy" saves her claims. *A.Q.C.*, 656 F.3d at 144; *see Clark*, 89 F.4th at 95.

In this case, undisputed facts in "the record establish that the prerequisites of equitable tolling have not been met." *Clark*, 89 F.4th at 95. It bears emphasizing that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [s]he has been pursuing [her] rights diligently, ***and*** (2) that some extraordinary circumstance stood in [her] way." *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021) (emphasis added) (quoting *Watson v. United States*,

15

865 F.3d 123, 132 (2d Cir. 2017)). The Government submits that there is no evidence in the record to support either element.

In particular, it is undisputed that on August 12, 2022, nearly two full years after her injury accrued, Plaintiff filed a lawsuit in state court, instead of filing an administrative claim with HHS. *See* State Action Compl.; Aff. ¶ 4; Osmond Decl. ¶ 2. Plaintiff contends that her filing of the State Action is evidence of her diligence, stressing that "the plaintiff was not aware of the federal nature of the defendants." *See* Aff. ¶¶ 20, 21. However, Second Circuit authority clearly requires the opposite inference. *See A.Q.C.*, 656 F.3d at 145; *Pryce*, 2022 WL 3155842, at *8. Plaintiff's filing of the State Court Action, instead of the SF-95, demonstrates that Plaintiff's counsel "neglected to take th[e] simple step" of "investigating [her] possible claim," including "what, if any, restrictions on the time and forum for bringing such a claim might exist" and the potential "federal nature" of the defendants. *A.Q.C.*, 656 F.3d at 145. The Second Circuit has explained that such basic research is "standard due diligence in every medical malpractice case." *Id.* Thus, contrary to Plaintiff's contention, her "filing suit in the wrong court" demonstrates an unmistakable "lack of diligence." *Pryce*, 2022 WL 3155842, at *8.

To make matters worse, there is no dispute that Plaintiff received "express notice that [her] claims were governed by the FTC" on September 2, 2022. Aff. ¶ 5; *see* Verified Ans. at 2, 6. In other words, despite her counsel's failure to do basic due diligence before filing a lawsuit, Plaintiff was on notice *within mere weeks* of the expiration of the limitations period for filing the SF-95 that her claims could "only be brought under the Federal Torts Claims Act in the appropriate Federal Jurisdiction." Verified Ans. at 6; *see* Aff. ¶¶ 5, 18, 21. Yet there is no dispute that Plaintiff waited *more than a year and ten months* after she received "express notice" that her claims were governed by the FTCA to file the SF-95. Aff. ¶¶ 5, 6.

16

Plaintiff offers no plausible justification for this stunning lack of diligence. Her counsel simply attests that, by the time Plaintiff received "express notice" from the defendants in the State Action that her claims were governed by the FTCA, "the two-year statute of limitations had already expired." Aff. ¶¶ 18, 21. Plaintiff's counsel further attests that, "[o]nce the federal nature of the claim was clarified, Plaintiff's counsel actively corresponded with" counsel for the Government "to clarify the administrative process." Aff. ¶ 18.

No reasonable factfinder could conclude that the affidavit of Plaintiff's counsel supports a finding of diligence. *See Clark*, 89 F.4th at 95. It is not the responsibility of a defendant to educate a plaintiff's attorney about the basic steps necessary to prosecute her claim against the defendant. *See A.Q.C.*, 656 F.3d at 145. Rather, as the Second Circuit has explained in the context of a medical malpractice action under the FTCA that was dismissed as untimely, "[i]t is fundamental" that the plaintiff's attorney must "investigate" those steps and, having failed to so, "cannot [later] argue that it diligently pursued th[e] claim on [the plaintiff's] behalf." *Id.* Unfortunately for Plaintiff, who experienced a tragedy, her chosen counsel's total lack of diligence in pursuing her rights is "imputed" to Plaintiff. *S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998); *see Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962).

Since undisputed facts establish Plaintiff's lack of diligence, there is no genuine dispute that the two prerequisites of equitable tolling are not satisfied in this case. *See Clark*, 89 F.4th at 95. As such, the Court need not address whether an extraordinary circumstance prevented Plaintiff from timely filing the SF-95. *See Smalls*, 10 F.4th at 145. It is clear, however, that there is no genuine dispute on this point, either.

Plaintiff raises two entirely meritless arguments on this point. Plaintiff first asserts, improperly, in an affidavit of counsel, rather than a memorandum of law, and without offering any

17

supporting argument, that "[t]he delayed and explicit notification of the defendants' federal status constitutes extraordinary circumstances." Aff. ¶ 24. The Court has already observed that Plaintiff's counsel appears to be laboring under a terrible misapprehension that defendants should advise her how to sue them. In all events, "the issue of federally-funded health centers in FTCA cases is not an obscure or infrequent one." *J.D. ex rel. Doe v. United States*, No. 10-cv-4296 (DLC), 2011 WL 292010, at *11 (S.D.N.Y. Jan. 28, 2011), *aff'd sub nom. Dominguez ex rel. Dominguez v. United States*, 468 F. App'x 23 (2d Cir. 2012). There is absolutely nothing extraordinary about this circumstance. *See id.*; *A.Q.C.*, 656 F.3d at 145.

Second, Plaintiff asserts that "then-Governor Cuomo" issued "a series of Executive Orders" tolling statutes of limitations during the "COVID-19 pandemic." Aff. ¶ 9. Again, any argument based on this assertion does not belong in an affidavit. Moreover, obviously, the Governor of New York clearly does not have the authority to toll a federal statute of limitations. Plaintiff does not argue that he even purported to do so, and fails to cite the supposedly relevant executive orders. Moreover, Plaintiff's mention of the pandemic is insufficient to raise a dispute of fact as to whether it was an extraordinary circumstance that prevented her from filing the SF-95. *See Pryce*, 2022 WL 3155842, at *8. Indeed, the pandemic did not prevent Plaintiff from filing the State Court Action, and she offers the Court no reason to infer that it prevented her from instead filing the required administrative claim with HHS. *See Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000) (litigant seeking equitable tolling must "show" how "problems rendered him unable to pursue his legal rights during the [relevant] time period"). Accordingly, on the record before the Court, there is no genuine dispute that Plaintiff is not entitled to equitable tolling.

Plaintiff's theory of equitable estoppel fares no better. "The doctrine of equitable estoppel

is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001).  For example, a defendant may be estopped from asserting a statute of limitations defense where "the defendant lulls the plaintiff into not [timely] filing suit with assurances that [it] will settle the case."  *Ellul*, 774 F.3d at 802.  "To invoke equitable estoppel, a plaintiff must show that: '(1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to [her] detriment.'"  *Id.* (quoting *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)).

The undisputed facts in the record establish that the doctrine of equitable estoppel does not apply to this case.  As explained above, this case is time-barred because Plaintiff failed to file an administrative tort claim "within two years" of her injury.  28 U.S.C. § 2401(b).  There is no dispute that when the statute of limitations for Plaintiff to file the SF-95 expired, on or about August 15, 2022, the Government had not made any representations to Plaintiff whatsoever.  As such, there is no dispute that the Government did nothing to "lull[]" Plaintiff into failing to file the SF-95 by the end of the limitations period.  *Ellul*, 774 F.3d at 802.  In other words, it is undisputed that the Government's "conduct" is not what "caused" Plaintiff "to delay" filing the SF-95 until after the statute of limitations had expired.  *Id.* (quoting *Cerbone*, 768 F.2d at 49–50).

It is well-established that waivers of sovereign immunity, such as the FTCA, and statutes of limitations are strictly construed.  *See Wilkins v. United States*, 598 U.S. 152, 161 (2023).  Thus, as the Second Circuit has explained, "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day."  *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (internal quotation marks a citation omitted).  Plaintiff's

19

lawsuit became time-barred as soon as the two-year period for filing an administrative tort claim expired without Plaintiff filing the SF-95 and without any equitable reason to extend that two-year period. *See id.* Put another way, the equitable reason for reviving a time-barred claim must apply to the "entire period" after the statute of limitations expired. *United States v. Banks*, No. 06-cv-786 (DC), 2006 WL 2927235, at *5 (S.D.N.Y. Oct. 13, 2006); *see also Rashid v. Mukasey*, 533 F.3d 127, 132 (2d Cir. 2008).

In support of her argument for equitable estoppel, Plaintiff submits email correspondence between Plaintiff's counsel and counsel for the Government in *Zheng I*, from late April and early May 2024, which was more than a year and a half after the statute of limitations for Plaintiff to file the SF-95 had expired. *See* Email Corr. at 4; Aff. ¶¶ 6, 19, 29. As indicated above, the substance of this exchange does nothing to cure Plaintiff's failure to file the SF-95 for more than a year and a half before it took place. In other words, this purported evidence is not material to the question of whether Plaintiff's lawsuit is time-barred. *See Anderson*, 477 U.S. at 248 (explaining that facts are not material and cannot "preclude the entry of summary judgment" if they cannot change "the outcome of the suit under the governing law").

In any event, the emails reflect that, in connection with Plaintiff's decision to stipulate to the dismissal without prejudice of *Zheng I*, Plaintiff requested the Government's "consent to allow [Plaintiff] to file a Form 95." Email Corr. at 4. Counsel for the Government responded: "There's nothing preventing you from filing the administrative claim." *Id.*[5] Thereafter, Plaintiff stipulated

---

[5] This statement by counsel for the Government in *Zheng I* was arguably misleading. However, it was not a clear waiver by the Government of its statute of limitations defense to this lawsuit. *See Wilkins*, 598 U.S. at 161 (where a statute of limitations is a condition of a waiver of sovereign immunity, the statute of limitations must be strictly construed); *see also Port Distrib. Corp. v. Pflaumer*, 880 F. Supp. 204, 211 (S.D.N.Y.) (discussing the general principle that "waiver . . . of a known right, which must be evidenced by a clear manifestation of intent"), *aff'd*, 70 F.3d 8 (2d Cir. 1995). It is also far from clear that the emails, which are hearsay, are admissible as evidence of the truth of the proposition that the Government consented to allow Plaintiff to file an otherwise time-barred administrative claim. *See Nambiar*, 158 F.4th at 364.

to the dismissal without prejudice of *Zheng I* "pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)."  Stip. and Order of Dismissal.  The Stipulation includes a statement that "Plaintiff is allowed to proceed [sic] the administrative claim."[6]  *Id.*

As an initial matter, the Court notes that, contrary to Plaintiff's suggestion, it is immaterial that the judge who presided over *Zheng I* "so-ordered" the parties' Stipulation dismissing the case. Aff. ¶ 31; *see Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir. 1998).  The parties' Stipulation expressly provides that *Zheng I* was dismissed "pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)."  Under that Rule, a "plaintiff may dismiss an action without a court order."  Fed. R. Civ. P. (a)(1)(A).  As the Second Circuit has explained, "[t]he judge's signature" on such a stipulation "d[oes] not change the nature of the dismissal," and, indeed, "the court lack[s] the authority to [place] condition[s]" on the "dismissal."  *Hester Indus.*, 160 F.3d at 916.  As such, it makes no difference to whether this case is time-barred that Plaintiff's prior voluntary dismissal of *Zheng I* was signed by a judge.  *See id.*

Furthermore, neither the parties' Stipulation nor the email correspondence in *Zheng I* raises a genuine dispute as to whether the Government is equitably estopped from arguing that this case is time-barred.  *See Ellul*, 774 F.3d at 802.  Plaintiff has not offered evidence that the Government "made a definite misrepresentation of fact."  *Ellul*, 774 F.3d at 802.  Plaintiff offers evidence that counsel for the Government in *Zheng I* stated, "There's nothing preventing you from filing the administrative claim."  Email Corr. at 4.  That is not "a definite misrepresentation of fact."  *Ellul*, 774 F.3d at 802.  On the contrary, there is no dispute that, ***after inexplicably waiting two more***

---

[6] The Government asserts that "Plaintiff's counsel inserted this ungrammatical language into the stipulation of dismissal—originally drafted by the Government—without notifying the assigned Assistant U.S. Attorney, who was unaware of its inclusion when he countersigned and filed the stipulation."  Mem. at 8 n.5.  Notwithstanding apparent sloppiness by counsel for the Government, this makes no difference to the resolution of the Government's motion, since Plaintiff's lawsuit was already time-barred, and there was no clear waiver by the Government of its statute of limitations defense.

*months*, Plaintiff in fact filed the SF-95.  Aff. ¶ 6; *see* SF-95.

Moreover, Plaintiff cannot raise a genuine dispute that she "reasonably relied" on a misrepresentation by the Government "to [her] detriment," as required for equitable estoppel. *Ellul*, 774 F.3d at 802.  Plaintiff obliquely suggests, without clearly arguing, that she would not have not stipulated to the dismissal of *Zheng I* if the Government had not agreed that she could "pursue the correct administrative process under the FTCA."  Aff. ¶ 31.  However, if Plaintiff had not stipulated to the dismissal of *Zheng I*, the case unquestionably would have been dismissed for failure to exhaust administrative remedies because Plaintiff had not filed an administrative claim with HHS before she filed *Zheng I*.  *See* 28 U.S.C. § 2675(a); *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019); *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004); *Bakowski v. Hunt*, 150 F. App'x 19, 21 (2d Cir. 2005).

As such, Plaintiff was not prejudiced by her voluntary dismissal of *Zheng I*.  She did not rely to her detriment on the statement by counsel for the Government in *Zheng I* that "nothing" was "preventing" her from "filing the administrative claim" or the statement in the Stipulation that she was "allowed" to file it.  Email Corr. at 4; Stip. and Order of Dismissal; *see Ellul*, 774 F.3d at 802.  Rather, Plaintiff's claims were already time-barred before the email correspondence and the Stipulation in *Zheng I* occurred.  More than a year and a half earlier, Plaintiff had failed timely to file an administrative claim with HHS within two years of her injury, as required under the FTCA, not because of any conduct by the Government but because of her counsel's failure to do "standard due diligence" for her malpractice claim.  *A.Q.C.*, 656 F.3d at 145.  Accordingly, based on the undisputed facts before the Court, the Government is entitled to judgment as a matter of law that Plaintiff's claims are time-barred.  *See Alta Partners*, 165 F.4th at 148–49.

## IV.    CONCLUSION

For the reasons set forth above, the Government's motion to dismiss or in the alternative for summary judgment [ECF No. 17] is GRANTED.   The Clerk of Court respectfully is requested to terminate the motion at docket entry 17 and to close this case.

**SO ORDERED.**

**Date:  March 23, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**